FLOYD R. GIBSON, Senior Circuit Judge.
 

 The National Labor Relations Board (Board) appeals from the district court’s
 
 [1]
 
 affirmance of a bankruptcy court’s
 
 [2]
 
 order preliminarily enjoining the Board from conducting proceedings on a complaint it had issued against Superior. We affirm.
 

 I. Facts.
 

 Superior is a trucking company which has several terminals throughout the South and Midwest. On November 26, 1982, Superior filed a voluntary petition in bankruptcy under Chapter 11. 11 U.S.C. §§ 1101-74 (1982). At that time, Superior had a number of collective-bargaining agreements with different unions. On February 10,1983, Superior filed an application to reject its executory collective-bargaining agreements. The bankruptcy court approved the application on April 25.
 

 Shortly after the bankruptcy petition was filed, Superior made some changes in its day to day operations. As a result, several unions filed unfair labor practices charges with the Board, which in turn filed a complaint against Superior. Superior asked the bankruptcy court to enjoin the Board from proceeding with the complaint. After a hearing, the bankruptcy court found specifically that: there were fifty-two charges set for hearings before the Board; trial of the Board’s complaint held the possibility of three to four weeks of trial time at an approximate cost of $65,000; and that weeks of preparation time would be necessary for the hearings. The bankruptcy court concluded that the time and effort of management and the expense which would have been required by the hearings were substantial. Thus, the Board proceedings threatened the assets of the debtor’s estate. Pursuant to § 105 of the Bankruptcy Act, the bankruptcy court issued a preliminary injunction which prohibited the Board “from proceeding in any manner whatsoever to process any of the grievances arising out of the acts of the debtor prior to April 25, 1983 * * 11 U.S.C. § 105 (1982). The Board appealed this decision to the district court.
 

 The district court framed the issue on appeal as “whether the Bankruptcy Court had the authority to permit the debtor-ap-pellee to reject the collective-bargaining agreements with respect to the grievances at issue.” Relying oh the United States Supreme Court’s decision in
 
 NLRB v. Bildisco & Bildisco,
 
 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the district court affirmed the bankruptcy court’s order.
 

 The Board then moved the district court to reconsider its decision, vacate its order, direct the bankruptcy court to vacate the preliminary injunction, and remand the proceeding to the bankruptcy court with directions to dismiss it as moot. The Board and Superior had entered into a settlement agreement before the district court had issued its original decision. The agreement called for the withdrawal of the charges against Superior but, as the district court noted, specifically reserved to the Board or
 
 *697
 
 the unions the right to reinstate the same charges under certain circumstances. The district court rejected the contention that the controversy was moot. In its petition for reconsideration, the Board also argued that the district court had misapprehended the issue on appeal: the issue was not whether Superior could reject the collective-bargaining agreement, but whether the bankruptcy court could enjoin the Board from processing the charges which arose from rejection of the agreement. The district court accepted this statement of the issue and, once again on the authority of
 
 Bil-disco,
 
 affirmed the bankruptcy court’s decision.
 

 II. Discussion.
 

 A. Mootness
 

 The Board argues that the settlement agreement which the parties entered into renders this controversy moot because the charges filed with the Board have been withdrawn. Thus, the Board continues, the district court’s conclusion, that “the grievances at issue here have only been withdrawn and therefore there exists the possibility that they can be reactivated or refiled at any time,” is an inaccurate appraisal of the situation. We fail to perceive the inaccuracy of the district court’s analysis.
 

 The settlement agreement provides as follows:
 

 IT IS HEREBY ORDERED that the withdrawal requests be, and they hereby are, approved conditionally based upon a representation that a private settlement has been reached between the parties and upon the performance of the undertakings in the private settlement between the parties. Upon application by the Charging Parties, supported by evidence that those undertakings have not been complied with, the charges are subject to reinstatement for further processing.
 

 Settlement agreements are contracts subject to the general rules of contract construction.
 
 Roberts v. Browning,
 
 610 F.2d 528, 533 (8th Cir.1979);
 
 see Gardiner v.
 

 A.H. Robins Co., Inc.,
 
 747 F.2d 1180, 1187, 1188-89 (8th Cir.1984);
 
 Trnka v. Elanco Prod. Co.,
 
 709 F.2d 1223, 1226 (8th Cir.1983). Courts are bound to give the language used in contracts its plain, ordinary meaning.
 
 SEC v. White & Co., Inc.,
 
 546 F.2d 789, 792 (8th Cir.1976). Here, the agreement provides unambiguously that the charges conditionally withdrawn could be reinstated. Thus, the controversy between these parties was not rendered moot by the settlement agreement. The Supreme Court has noted as follows:
 

 There is a line of decisions in this Court standing for the proposition that the “voluntary cessation of allegedly illegal conduct does not deprive the tribunal of the power to hear and determine the case,
 
 i.e.,
 
 does not make the case moot.” * * * [A] voluntary cessation of the * * practices complained of could make this case moot only if it could be said with assurance “that ‘there is no reasonable expectation that the wrong will be repeated.’ ” * * * Otherwise * * * “[t]he defendant is free to return to his old ways” * * *.
 

 DeFunis v. Odegaard,
 
 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974) (citations omitted).
 

 The Board argues that, as a practical matter, the old charges will never be reinstated because the parties have entered into new contracts, and any future charges will stem from violations of those contracts. However, the right to bring charges for violations of the new contracts does not vitiate the right preserved in the settlement agreement to reinstate the original charges against Superior. Further, we are not free to alter the terms of a contract simply because a party represents that those terms will never be acted upon.
 
 See Johnson Controls, Inc. v. City of Cedar Rapids,
 
 713 F.2d 370, 375 (8th Cir.1983) (“our function in construing this contract is to determine the parties’ intent from what they said and not from what they meant to say”). The parties were, and are, free to amend the settlement agreement to provide that the original charges can not be rein
 
 *698
 
 stated. Until that time, the language of the agreement is clear, the parties to the agreement are bound by it, and — by virtue of that agreement — the controversy between the parties is not moot.
 

 B. Jurisdiction
 

 The Board argues next that the bankruptcy court did not have jurisdiction to enjoin the processing of the charges. In essence, it argues that because the bankruptcy court has no jurisdiction to adjudicate unfair labor practice charges or to liquidate bankruptcy claims, it cannot enjoin the Board from so doing. This conclusion is a
 
 non sequitur.
 

 Section 1471 of the Judiciary Act grants the bankruptcy courts jurisdiction over bankruptcy petitions. 28 U.S.C. § 1471 (1982). Section 105 of the Bankruptcy Act allows a bankruptcy court to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105 (1982). It appears that this court has not yet considered directly the scope of a bankruptcy court’s power to enjoin federal regulatory proceedings. However, the courts which have considered the question have determined that § 105 grants a bankruptcy court the discretion and authority to enjoin federal regulatory proceedings when those proceedings “threaten” the assets of the debtor’s estate.
 
 In re Shippers Interstate Serv., Inc.,
 
 618 F.2d 9, 13 (7th Cir.1980),
 
 quoting In re Bel Air Chateau Hosp., Inc.,
 
 611 F.2d 1248, 1251 (9th Cir.1979);
 
 In re J & G Express, Inc.,
 
 No. J84-0623(B) slip op at 5. (Bankr.S.D.Miss. Oct. 17, 1984) (unpublished);
 
 In re Brada Miller Freight Sys. Inc.,
 
 16 B.R. 1002, 1012, 1013 (N.D.Ala.1981),
 
 vacated on other grounds, In re Brada Miller Freight Sys., Inc.,
 
 702 F.2d 890 (11th Cir.1983);
 
 In re Seeburg Corp.,
 
 5 B.R. 364, 368 (Bankr.N.D.Ill.1980),
 
 quoting, Shippers,
 
 618 F.2d at 13.
 
 See also In re King Memorial Hosp. Inc.,
 
 4 B.R. 704, 709 (Bankr.S.D.Fla.1980);
 
 Missouri v. United States Bankruptcy Ct.,
 
 647 F.2d 768, 776-77, 776-77 n. 14 (8th Cir.1981),
 
 cert. denied,
 
 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982).
 

 We agree with these courts. Accordingly, we hold that the bankruptcy court has the discretion and authority to enjoin federal regulatory proceedings under § 105 when those proceedings would threaten the debtor’s estate, and when the court has jurisdiction over a petition in bankruptcy under 28 U.S.C. § 1471.
 

 In the next breath, the Board concedes the bankruptcy court’s authority to enjoin Board proceedings when they directly threaten the assets of the bankrupt’s estate, but argues that — as a matter of law — the expenses incurred in defending against unfair labor practice charges do not constitute a threat to the assets of a debtor’s estate. We strenuously disagree.
 

 Indeed, the courts which have determined that the bankruptcy courts are empowered to enjoin federal and state regulatory proceedings have determined necessarily — if only by implication — that whether the litigation expenses involved in those proceedings “threaten” the assets of the estate is a question of fact.
 
 See generally, Shippers Interstate,
 
 618 F.2d at 13;
 
 Bel Air,
 
 611 F.2d at 1251;
 
 Brada Miller,
 
 16 B.R. at 1012-13;
 
 Seeburg,
 
 5 B.R. at 368. Otherwise the power to issue an injunction granted by § 105 would be meaningless as far as federal regulatory proceedings are concerned. There is case law to support the proposition that, in general, litigation expenses will not constitute an injury sufficient to justify enjoining litigation.
 
 In re Davis,
 
 691 F.2d 176, 178 (3d Cir.1982), (criminal prosecution of debtor),
 
 quoting, Younger v. Harris,
 
 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971);
 
 Barnette v. Evans,
 
 673 F.2d 1250, 1251 (11th Cir.1982) (criminal prosecution of debtor);
 
 Frey v. Commodity Exch. Auth.,
 
 547 F.2d 46, 49 (7th Cir.1976) (administrative proceeding),
 
 quoting, Renegotiation Bd. v. Bannercroft Shipbuilding Corp.,
 
 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974);
 
 see Myers v. Bethlehem Shipbuilding Corp.,
 
 303 U.S. 41, 51-52, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938). However, none of
 
 *699
 
 these cases dealt with the precise type of controversy before us — one between the Board and a bankruptcy estate — and we decline to extend the rule in those cases to this controversy.
 

 It is of particular importance that bankruptcy courts be able to determine factually, on a case by case basis, whether regulatory proceedings will threaten the assets of the estate because otherwise the court’s power to preserve the estate over which it presides is illusory: the costs incurred in defending against charges may deplete the estate. Contrary to the Board’s contention, allowing bankruptcy courts to make these factual determinations does not preclude the possibility of holding regulatory proceedings during the pendency of bankruptcy proceedings. We are not holding that, as a matter of law, litigation expenses are a threat to the assets of a bankruptcy estate. To the contrary, there will probably be cases where going forward with regulatory proceedings will not threaten the assets of a bankrupt estate, even though they may diminish them. This is a factual determination which will have to be made by bankruptcy courts on a case by case basis.
 

 In this case, the bankruptcy court found specifically that the time and effort of management, as well as the expense required in defending against fifty-two grievances, threatened the assets of the debtor’s estate.
 
 [3]
 
 The district court held that this finding was not clearly erroneous, and we agree.
 

 We think that the conclusion we reach today is supported by the Supreme Court’s decision in
 
 Bildisco.
 
 The Board argues that nothing in
 
 Bildisco
 
 suggests that the bankruptcy courts may enjoin a Board proceeding regarding unfair labor practice charges which are based on a debtor’s mod-ifieation or rejection of a collective-bargaining agreement. We disagree.
 

 The Supreme Court framed the second issue it considered in
 
 Bildisco
 
 as “whether the NLRB can find a debtor-in-possession guilty of an unfair labor practice for unilaterally rejecting or modifying a collective-bargaining agreement before formal rejection by the Bankruptcy Court.”
 
 Bildisco,
 
 465 U.S. at-, 104 S.Ct. at 1197. The Court answered this question in the negative.
 
 Id.,
 
 465 U.S. at -, 104 S.Ct. at 1199. The Court noted that it would defeat the purpose of allowing debtors-in-possession to reject executory collective-bargaining contracts if the Board nevertheless were allowed to proceed with hearings on charges which were filed as a result of the debtor’s unilateral modifications of those agreements.
 
 Id.,
 
 465 U.S. at-, 104 S.Ct. at 1198.
 

 It is true that the Court did not consider directly whether the Board may proceed with hearings on charges arising from modification of collective-bargaining agreements. Nevertheless, we agree with the district court that the language in
 
 Bildisco,
 
 by direct implication, supports the proposition that a bankruptcy court can enjoin the Board from filing or processing unfair labor practice charges. The Court concluded as follows:
 

 [t]he Board is precluded from, in effect, enforcing the contract terms of the collective-bargaining agreement by filing unfair labor practices against the debt- or-in-possession for violating § 8(d) of the NLRA.
 
 Though the Board’s action is nominally one to enforce § 8(d) of that Act, the practical effect of the enforcement action would be to require adherence to the terms of the collective-bargaining agreement. But the filing of a petition in bankruptcy means that the
 
 *700
 
 collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again. Consequently, Board enforcement of a claimed violation of § 8(d) under these circumstances would run directly counter to the express provisions of the Bankruptcy Code and to the Code’s overall effort to give a debtor-in-possessiopn some flexibility and breathing space. * * * We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of the NLRA § 8(d).
 

 Bildisco,
 
 465 U.S. at-, 104 S.Ct. at 1199 (emphasis added). If the Board can neither file charges against nor find a debtor-in-possession guilty of an unfair labor practice for unilaterally rejecting or modifying a collective-bargaining agreement, certainly it' cannot proceed with hearings on charges arising under that contract.
 

 The Board argues, however, that it is the “exclusive forum” for determining whether an alleged unfair labor practice falls within the
 
 Bildisco
 
 protected conduct. We disagree. Whether an alleged unfair labor practice stems from a debtor’s rejection or modification of a collective-bargaining agreement or from the debtor’s failure to bargain over the terms of a new contract, is a question of contract construction, one of law, to be determined by the bankruptcy court when a debtor petitions the court to enjoin Board proceedings. In
 
 Bil-disco,
 
 the Supreme Court made it clear that while a debtor-in-possession is not guilty of an unfair labor practice by unilaterally breaching a collective-bargaining agreement after filing a petition in bankruptcy, it remains obligated to bargain in good faith under NLRA § 8(a)(5) over the terms and conditions of a possible new contract.
 
 Bildisco,
 
 465 U.S. at -, 104 S.Ct. at 1201. Thus, if an unfair labor practice charge stems from a debtor’s failure to bargain in good faith over the terms and conditions of a new contract, a bankruptcy court should deny a debtor’s motion to enjoin Board proceedings on the charge.
 

 Finally, the Board argues that, “contrary to the district court’s mistaken assumption,” it had alleged the commission of unfair labor practices which did not depend on the existence of the collective-bargaining agreement. To support this contention, the Board refers the court to one allegation in a thirty-one page complaint. The contention is disingenuous.
 

 The allegation to which we were referred charges that Superior failed to produce time cards for a union’s inspection. However, it is not at all clear from the face of the allegation that the charge is “independent” from the existence of the collective-bargaining agreement. We are unwilling to read into the allegation that which is not clear on its face. The Board cites
 
 NLRB v. Truitt Manufacturing Co.,
 
 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956) as support for the blanket proposition that, as a matter of law, an employer is guilty of an unfair labor practice when it fails to produce documents requested by a union.
 
 Truitt
 
 does not support such a proposition. To the contrary, in
 
 Truitt
 
 the court held that whether an employer’s failure to produce requested documents constituted an unfair labor practice would depend on the particular circumstances of each individual case.
 
 Id.,
 
 at 153-54.
 

 The Board does not direct us to any other allegations in the complaint which are “independent” of the collective-bargaining agreement. After a close reading of the Board’s complaint, we are unable to find any. Thus, we find no merit to the contention that the charges against Superi- or were independent of the collective-bargaining agreement.
 

 In sum,
 
 [4]
 
 we hold that a bankruptcy court may, upon a motion by the debtor,
 
 *701
 
 enjoin the Board from proceeding with hearings on unfair labor practice charges which arise from the debtor’s unilateral modification or rejection of a collective-bargaining agreement, when those proceedings would threaten the assets of the debt- or’s estate. Accordingly, the district court’s judgment is affirmed.
 

 [1]
 

 . The Honorable Garnett Thomas Eisele, United States District Court for the Eastern District of Arkansas.
 

 [2]
 

 . The Honorable Charles W. Baker, United States Bankruptcy Court for the Eastern District of Arkansas.
 

 [3]
 

 . It is clear from the bankruptcy court’s opinion that the court followed the correct standards for issuing a preliminary injunction. Those standards were set forth by this court in
 
 Dataphase Sys., Inc. v. C L Sys., Inc.,
 
 640 F.2d 109, 113 (8th Cir.1981), and are as follows:
 

 Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.
 

 [4]
 

 . The Board also argues that, under
 
 Northern Pipeline Const. Co. v. Marathon Pipeline,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the bankruptcy court did not have jurisdiction to enjoin the Board's proceedings. This contention is without merit.
 
 See
 
 General Order No. 24, (E.D.Ark. Dec. 20, 1982, amended April 2, 1984).
 
 See also, Lindsey v. Ipock,
 
 732 F.2d 619,
 
 *701
 
 624 (8th Cir.),
 
 cert. denied sub nom, Cyrts
 
 v. 185 (1984).
 
 French,
 
 —U.S.-, 105 S.Ct. 247, 83 L.Ed.2d