**In re WILNER WOOD PRODUCTS CO., Debtor.**

**WILNER WOOD PRODUCTS CO., Plaintiff,**

**v.**

**STATE OF MAINE DEPARTMENT OF ENVIRONMENTAL PROTECTION and Dean C. Marriott, Defendants.**

**Bankruptcy No. 90–20099.
Adv. No. 90–2078.**

United States Bankruptcy Court,
D. Maine.

July 11, 1990.

---

See also 119 B.R. 342.

Gregory D. Woodworth, Jacob A. Manheimer, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for debtor.

Peter J. Brann, Dennis J. Harnish, Asst. Attys. Gen., Augusta, Me., for State defendants.

Michael J. Pearce, William H. Leete, Jr., Beagle, Pearce, Feller & Ridge, Portland, Me., for Creditors' Committee.

## DECISION AND ORDER GRANTING DEBTOR'S COMPLAINT FOR PRELIMINARY INJUNCTION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.[*]

Heard on June 15, 1990 on a combined hearing on the debtor, Wilner Wood Products Co.'s, Complaint for Temporary Restraining Order and Preliminary Injunction, wherein Wilner seeks to stay the effectiveness of a May 11, 1990[1] order issued by the State of Maine, Department of Environmental Protection ("DEP"). That order denied Wilner's application for renewal of its

air emission license[2]. Two previously undiscussed issues were also raised at the hearing, and the parties were requested to, and did, file supplemental memoranda addressing those specific points of law.

Initially, however, before discussing these two "new" issues, we hold as follows, regarding the debtor's compliance with the four part test for a preliminary injunction:

■ 1. Based on the evidence and the applicable law, we conclude that if the effectiveness of the May 11, 1990 DEP order is not enjoined pending the debtor's appeal to the Maine Board of Environmental Protection, irreparable harm will result. Without an injunction, the debtor will either have to shut down operations and terminate the employment of one hundred and fifty people, or continue to operate without a valid license, in clear violation of state law. The record indicates that either course would probably lead to the early demise of this reorganization case, and result in liquidation in Chapter 7. In these circumstances the irreparable harm element has been easily proved.

■ 2. With respect to the likelihood of success on the merits, we have previously ruled, and have not since been persuaded otherwise, that *In re Security Gas & Oil, Inc.,* 70 B.R. 786, 793, n. 3 (Bankr.N.D.Cal. 1987) articulates the proper standard for considering this element[3]. In our June 14, 1990 decision denying the DEP's Motion to Dismiss, 119 B.R. 342, we held that the debtor has satisfied this part of the test, and we endorse that holding herein. Assuming only arguendo, however, that the State's assertion that "success on the merits" refers to the likelihood of ultimate success on appeal, we find that the debtor also meets that test. We base this alterna-

---

[*] For the District of Rhode Island, sitting by designation.

1. Although the DEP order was dated May 11, 1990, it is alleged and not disputed that it was not to become effective until receipt by the debtor, which occurred on May 15, 1990.

2. We have previously issued two written opinions in this adversary proceeding which consider, to some extent, several questions dealt with in this decision. As to those issues which we

have already addressed, they will not be reexamined in this opinion.

3. "[T]he likelihood of success on the merits logically must refer to whether the debtor can show that enforcement of the state laws will unduly interfere with the bankruptcy adjudication. The concept of success on the merits is not limited to whether there is a defense to the threatened action under nonbankruptcy law." *In re Security Gas & Oil, supra* at 793, n. 3.

tive ruling largely on the debtor's contention that the DEP acted arbitrarily and capriciously in denying its air emission license application, after TEN YEARS of inaction, and then demanding compliance within thirty days of providing the format for the BPT analysis [4]. Under either standard, the likelihood of success on the merits has been established.

■ 3. Clearly, the balance of the harm element favors the debtor. The State DEP's argument that an injunction will interfere with its "institutional policy" of administering its own laws, falls far short of the harm which will befall the debtor and its employees if the injunction is not issued. In response to the defendant's complaint that our original order was overbroad and imprecise, we have since made it abundantly clear to the State DEP, formally and otherwise, that the purpose in issuing the injunction is to maintain the status quo until the resolution of debtor's administrative appeal of the DEP Order. It is NOT, and never has been this Court's intention to become involved in the adjudication of the substantive issues raised in the appeal, or to exercise jurisdiction in any way over the merits of the dispute between Wilner and the Maine DEP.

■ 4. Finally, under the circumstances present here, we find that the public interest will be far better served by issuing the preliminary injunction. While we are not unmindful of the DEP's duty to protect the health and welfare of the citizens of the State of Maine from violations of its air pollutant laws, there is not sufficient evidence to support such a claim [5]. Jeffrey Bradstreet, corporate director for air quality programs at ABB Environmental Services, testified that he had no data on which to base an opinion whether the debtor is in violation of ambient air quality standards, because the necessary tests have not been performed to make this determination.

Moreover, the State's unexplained ten year delay makes a self-inflicted mockery out of the argument that any possible violation is of an emergency nature. Furthermore, we agree with those courts which hold that "[t]he public interest is in successful rehabilitation of debtors ..." *In re Professional Sales Corp.,* 48 B.R. 651, 661 (Bankr.N. D.Ill.1985) (vacated on other grounds, 56 B.R. 753 (N.D.Ill.1985)); *Otero Mills, Inc. v. Security Bank & Trust,* 25 B.R. 1018 (D.N.M.1982). For all of these reasons, we find that the public interest favors issuance of the injunction, at this time.

Having satisfied the four part test for the issuance of a preliminary injunction, we must next address the more basic question whether this Court has the authority to grant the requested relief, under any circumstances. The DEP raises two arguments against jurisdiction—sovereign immunity, and the Anti–Injunction Act.

■ It is well settled that "the United States may not be sued absent a waiver of its sovereign immunity", *In re Professional Sales Corp.,* 56 B.R. 753, 760 (N.D.Ill. 1985) (citing, *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981)), and that "to abrogate the States' Eleventh Amendment immunity from suit in federal court,...., Congress must make its intention 'unmistakably clear in the language of the statute.'" *Hoffman v. Conn. Dept. of Income Maintenance,* — U.S. —, 109 S.Ct. 2818, 2822, 106 L.Ed.2d 76 (1989) (citing *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)).

The Supreme Court recently considered the scope of 11 U.S.C. § 106(c), entitled "Waiver of sovereign immunity", which provides that:

---

**4.** This is a huge equitable consideration in the debtor's favor, and an issue on which the State of Maine is noticeably quiet—notwithstanding that the State's ten year enforcement moratorium was conceded at the May 18, 1990 hearing on preliminary injunction.

**5.** This finding is based upon a review of the entire record, including the May 11, 1990 DEP order denying renewal of Wilner's air emission license No. 1774, and the Affidavit of Eric D. Kennedy filed in support of DEP's motion to dismiss the debtor's complaint for temporary restraining order and preliminary injunction.

Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

In *Hoffman, supra,* 109 S.Ct. at 2823, the Supreme Court held that where no proof of claim is filed, § 106(c) does not authorize monetary recovery from the States. The Court, however, then added that "[t]he language of § 106(c)(2) is more indicative of declaratory or injunctive relief than of monetary recovery".

In *In re Professional Sales Corp.,* 56 B.R. 753, 764, the precise legal issue before us was considered in the context of a § 105 stay against the EPA (although without the benefit of the Supreme Court's recent opinion in *Hoffman* ). Despite some reservation, the court ultimately held that "the Third Circuit's summary rejection of the EPA's argument, coupled with the long line of cases assuming a bankruptcy court's power to enjoin the government under § 105, suggest that the bankruptcy judge may have correctly determined the issue of sovereign immunity despite certain errors of analysis and a misguided belief that the doctrine is outmoded." *Id.* at 764.

We conclude that both *Hoffman* and *In re Professional Sales Corp.* support the view that § 106(c)(2) abrogates the State's sovereign immunity, to the extent that an injunction is issued pursuant to § 105.

■ Accordingly, taking into consideration (and incorporating by reference) our earlier analysis of § 105 in our June 14, 1990 decision on the DEP's Motion to Dismiss, we conclude that § 105 does indeed grant the Bankruptcy Court the authority to enjoin the effectiveness of the DEP's May 11, 1990 order, pending the appeal.

■ Additionally, the DEP raises the Anti–Injunction Act as a bar to the court's authority to enjoin the imposition of penalties against the debtor. We stated at the June 15, 1990 hearing that we had serious concern as to the authority of this Court to enter such an order, and we still have such reservations, notwithstanding the debtor and the creditors' committee arguments to the contrary. While the cases we have reviewed all deal with the assessment of penalties by the IRS, we believe that the Anti–Injunction Act would extend to any penalties the DEP might assess against the debtor in this instance [6]. However, as we ruled on June 14, 1990, we do not address the question at this time either, since the issue of fines or penalties may never materialize—for example, if the State loses on the merits of the appeal. While the deferral of this question gives little present peace of mind to the debtor, we do not believe that § 105 should be used to restrain only a possible future event. More importantly however, we do not feel, at this point, that § 105 gives us that power. *See* e.g., *In re John Renton Young, Ltd.,* 87 B.R. 635 (Bankr.D.Nev.1988); *In re American Bicycle Ass'n,* 895 F.2d 1277 (9th Cir. 1990).

For all of the above reasons, the effectiveness of the DEP's May 11, 1990 order denying the debtor's air emission license application is stayed, while the State appeal process is pending [7]. We issue this injunction for the limited purpose of facilitating the prosecution and timely resolution of said appeal, and in no way intend to inhibit that process or to prevent the parties from conducting settlement discussions. The narrow scope of the injunction is to prevent action directed at closing down the debtor's business operations, pending the State appeal process.

■ Lastly, we consider the DEP's Motion for Stay pending appeal, which was filed at the June 15, 1990 hearing. Because the issuance of such a stay would nullify the purpose for which this injunc-

---

**6.** Obviously, this issue will only arise if the DEP ultimately prevails on the debtor's appeal, and *then* elects to seek penalties in a separate action.

**7.** It has been represented by the parties that such appeals are heard and decided without undue delay.

tion is being issued, that request is DE-NIED. However, the DEP's Motion for leave to appeal our rulings herein is GRANTED.

Enter Judgment accordingly.