**WILNER WOOD PRODUCTS
CO., Plaintiff,**

v.

**STATE OF MAINE, DEPARTMENT OF
ENVIRONMENTAL PROTECTION, et
al., Defendants.**

Civ. No. 90–0228–B.

United States District Court,
D. Maine.

May 10, 1991.

Jacob A. Manheimer, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for Wilner Wood Products.

Peter J. Brann, State of Maine, Dept. of Atty. Gen., Augusta, Me., for State of Me.

Dept. of Environmental Protection & Marriott.

Michael J. Pearce, Portland, Me., for Creditors Committee.

William H. Leete, Jr., Beagle, Pearce, Feller & Ridge, Portland, Me., for Official Committee of Unsecured Creditors.

## MEMORANDUM DECISION

HORNBY, District Judge.

This bankruptcy appeal presents the issue whether the bankruptcy court has the authority to enjoin enforcement of the State of Maine's environmental laws, even temporarily, when they burden a debtor's reorganization efforts. Here, the bankruptcy court ordered the State to withhold its denial of an air emission license to a debtor while the debtor appealed the denial of the license to State authorities. Concluding that the bankruptcy court cannot issue such an injunction, I *VACATE* the bankruptcy court's order.

## FACTUAL BACKGROUND

Wilner Wood Products Company (Wilner Wood) owns a woodworking facility in Norway, Maine. Under Maine law, Wilner Wood must possess a valid air emission license from the Department of Environmental Protection (DEP). Wilner Wood's license expired on December 3, 1980. On January 8, 1981, Wilner Wood applied to renew the license. Under Maine law, this renewal application resurrected the validity of the old license until the Department acted on the application for renewal. For reasons that the record does not disclose, the DEP took no action on the renewal application until 1989. In September of that year Wilner Wood and the DEP began to discuss what Wilner Wood would have to do in order to renew its license. They agreed that Wilner Wood would submit a Best Practical Treatment (BPT) analysis [1] four weeks after the DEP notified Wilner

---

1. Under Maine law, Wilner Wood had to demonstrate three things: (1) the proposed emissions would receive the Best Practical Treatment (BPT); (2) the proposed emissions would not violate applicable air emission standards; (3) the proposed emissions would not violate applicable ambient air quality standards either alone or in conjunction with the emissions from other sources. *See* 38 M.R.S.A. § 590.

Wood of the proper format. The DEP notified Wilner Wood of the proper format on February 12, 1990. This was a particularly inconvenient time for Wilner Wood because on February 9, 1990, it filed for Chapter 11 reorganization under the Bankruptcy Code. The DEP gave Wilner Wood until March 16, 1990, to submit its BPT analysis. Because Wilner Wood was not in a position to pay its consultant, it did not do a BPT analysis or comply with any of the other requirements for a new license.

As a result, on May 11, 1990, the DEP denied Wilner Wood's renewal application, thereby discontinuing the effectiveness of the old license as of May 15, 1990. On the same day, the bankruptcy court issued a temporary restraining order *ex parte* enjoining the State of Maine and the Commissioner of Environmental Protection from denying Wilner Wood's renewal application until Wilner Wood's appeal of the DEP's denial was complete. In later hearings, the DEP informed the court that it would not seek any penalties against Wilner Wood until after its position had been confirmed through the State appeals process, but it refused to make the commitment that it would not then seek retroactive penalties. Wilner Wood persuaded the bankruptcy judge that it could not (and its creditors would not permit it to) take the risk of continuing to operate without a license because it might thereby be accruing penalties up to $25,000 per day. The bankruptcy judge concluded:

> Without an injunction, the debtor will either have to shut down operations and terminate the employment of one hundred and fifty people, or continue to operate without a valid license, in clear violation of state law. The record indicates that either course would probably lead to the early demise of this reorganization case, and result in liquidation in Chapter 7. In these circumstances the irreparable harm element has been easily proved.

*Wilner Wood Products Co. v. State of Maine, Department of Environmental Protection, (In re Wilner Wood Products Company)*, 119 B.R. 345, 347 (Bankr.D.Me. 1990). As a result, on July 11, 1990, the bankruptcy court issued a preliminary injunction staying the State's denial of Wilner Wood's license pending the state appeal process.[2] 119 B.R. at 346. The State defendants have appealed the preliminary injunction.

### DISCUSSION

▮▮▮ Title 28 United States Code, section 959(b), provides (with inapplicable exceptions omitted) (emphasis supplied):

> a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.*

The intent of Congress is unmistakably clear: a debtor in possession like Wilner Wood must manage and operate its property in compliance with State law. There is no exception for debtors who would be inconvenienced or burdened by State laws. The United States Supreme Court has indicated that this section is evidence of congressional intent that debtors in possession comply with the states' environmental laws. *See Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 505, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986); *Ohio v. Kovacs*, 469 U.S. 274, 285, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985) ("Finally, we do not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy

---

**2.** It is questionable whether the bankruptcy court injunction complies with the requirements of Fed.R.Civ.P. 65(d), applicable to bankruptcy proceedings under Bankruptcy Rule 7065. The duration and scope, *see* Rule 65(d) are particu-larly uncertain. Does it last only during the administrative appeal, or all the way to the Law Court? In light of my ruling, I choose not to rely on this issue, which was not briefed by the parties.

trustee—must comply with the environmental laws of the State ...”). Wilner Wood, the debtor in possession in this case, must therefore comply with the valid environmental laws of the State of Maine and obtain an air emission license if it wishes to manage and operate its property on an ongoing basis. The bankruptcy court cannot issue an injunction against the State that, even on a temporary basis, effectively grants Wilner Wood a license.

The automatic stay provision, 11 U.S.C. § 362, does not give the bankruptcy court authority to issue a stay in this case because it explicitly excepts a “proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power,” 11 U.S.C. § 362(b)(4), an exception that clearly applies here. But Wilner Wood argues that a bankruptcy court has the power under section 105 to enjoin *any* activity, including state law enforcement, that would threaten the assets of the bankruptcy estate. Section 105(a) provides: “The court may issue any order, process, or judgment that is appropriate to carry out the provisions of this title.” Because section 105 contains no exception comparable to the language of the automatic stay provision, Wilner Wood argues that a bankruptcy court can stay the enforcement of the State’s environmental laws by using section 105. To support this argument Wilner Wood refers to certain legislative history to section 362(b):

> The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of proposed title 11 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court ... have all the

traditional injunctive powers of a court of equity.... Stays or injunctions ... will not be automatic upon the commencement of a case, but will be granted or issued under the usual rules for the issuance of injunctions.... Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

S.Rep. No. 989, 95th Cong., 1st Sess. 51 (1978), *reprinted in* 1978, U.S.Code Cong. & Admin.News 5787, 5837. Wilner Wood argues that this language shows that Congress intended section 105 to give the bankruptcy court the power to stay even a state’s police powers.

I conclude that Wilner Wood’s argument must fail. Nothing in the general language of section 105 suggests that Congress intended it to override the specific prohibition of section 959(b). The First Circuit has stated that “even as a court of equity ... the bankruptcy court’s equitable discretion [deriving from section 105] is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code.” *In re Plaza de Deigo Shopping Center, Inc.*, 911 F.2d 820, 830 (1st Cir.1990); *accord, United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986) (“While the bankruptcy courts have fashioned relief under section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the bankruptcy code. That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity”).[3]

---

**3.** Although there is some bankruptcy authority to the contrary, *see Pennsylvania Public Utilities Commission v. Metro Transportation Company, (In re Metro)*, 64 B.R. 968 (Bankr.E.D.Pa.1986) (stay of administrative action involving insurance for taxicabs); *In re Mason*, 18 B.R. 817 (Bankr.W.D.Tenn.1982) (stay of revocation of liquor license), the better-reasoned cases that have focused on the language of 959(b) support this conclusion. *See Saravia v. 1736 18th Street N.W., Limited Partnership*, 844 F.2d 823, 826–827 (D.C.Cir.1988) (section 959(b) forbids debtor from violating housing code in bankruptcy); *Commonwealth Oil Refining Company, Inc. v.*

*United States Environmental Protection Agency, (In re Commonwealth Oil Refining Company, Inc.)*, 805 F.2d 1175, 1184 (5th Cir.1986) (enforcement of environmental laws is in the public interest and should not be stayed under 11 U.S.C. § 105); *United States of America v. Professional Sales Corporation, (In re Professional Sales Corp.)*, 56 B.R. 753, 764 (N.D.Ill.1985) (section 105 does not authorize a stay that would permit a debtor to avoid compliance with the environmental laws). *Walsh v. State of West Virginia, (In re Security Gas & Oil, Inc.)*, 70 B.R. 786, 796 (Bankr.N.D.Calif.1987) (“an environ-

Section 362(b)—upon whose legislative history Wilner Wood relies—exempts much more than state regulations or police power action from the automatic stay provision, and the Senate Report's general assertions about the scope of section 105 may have been written with the other exemptions in mind. Vague legislative history cannot contradict clear statutory language. Since section 959(b) is clear and direct, Wilner Wood must comply with valid state law, and the bankruptcy court has no authority to intervene.

Finally, Wilner Wood argues that the State acted arbitrarily and capriciously in sitting on its renewal application for nine years and is, therefore, temporarily estopped from enforcing its licensing requirements. But those are arguments for the administrative appeal before State tribunals. I find no exception in section 959(b) for situations where the State has acted slowly. I do not need to speculate about the variety of reasons that may have led both the DEP and Wilner Wood to permit the process to drag on. It is sufficient to observe that, particularly in the area of ongoing health and safety, failure to act previously should not preclude action now.

It is important to recognize that neither the bankruptcy court nor I have been called upon to decide whether the State can collect monetary penalties from Wilner Wood. The only issue is whether the State can be compelled by the bankruptcy court—even temporarily—to give Wilner Wood an air emission license for its ongoing activities in managing and operating its woodworking facilities. I conclude that under the Bankruptcy Code as informed by United States Supreme Court cases, it cannot. Wilner Wood, therefore, cannot show a likelihood of success on the merits of its claim in this adversary proceeding[4] and the preliminary injunction must be VACATED. I, therefore, need not decide the issue briefed by

the parties as to whether the Constitution permits a bankruptcy court to issue an injunction against the State without the State's consent.

The bankruptcy court's order is VACATED and the case is REMANDED for further proceedings as may be necessary.

SO ORDERED.

---

mental clean-up order should not be enjoined under section 105 where that order is designed to bring a debtor's continuing operation into compliance with state law.... Section 959(b) does not govern, however, where the debtor's business has ceased operations").

**4.** Here, in federal court, the question is not whether Wilner Wood has a likelihood of success on its argument in the State courts that the DEP acted arbitrarily or otherwise illegally. Instead, it is whether Wilner Wood has a likelihood of success on its argument that the bankruptcy court can enjoin a state regulatory proceeding.