**In re OLYMPIA HOLDING CORPORATION, et al.,**
**Debtors.**

**Lloyd T. WHITAKER, Trustee for Olympia Holding Corporation, Fidelcor Business Credit Corporation and Phoenix Advisors and Collections, Inc., Plaintiffs,**

**v.**

**INTERSTATE COMMERCE COMMISSION,**
**Defendant.**

**Bankruptcy Nos. 90–4195–3P–1, 90–4223–3P–1.**
**Adv. No. 92–2747.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 8, 1992.

George E. Ridge, Jacksonville, Fla., Kim D. Mann, Washington, D.C., for plaintiff Fidelcor Business Credit Corp.

Mitchell W. Legler, Gardner F. Davis, Jacksonville, Fla., for plaintiff Lloyd T. Whitaker, Trustee.

**444**

W. Kelsea Wilber, Steven R. Browning, Jacksonville, Fla., for plaintiff Phoenix Advisors and Collections, Inc.

Theodore K. Kalick, Ruth A. Harvey, Douglas J. Hughes, Washington, D.C., for defendant Interstate Commerce Com'n.

John B. MacDonald, Jacksonville, Fla., for IU Int'l.

James P. Condon, Rosemont, Ill., for Central States Southeast and Southwest Pension Funds.

Lloyd T. Whitaker, Trustee.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding was commenced pursuant to 11 U.S.C. § 301, pursuant to jurisdiction vested by 28 U.S.C. Sections 1334, 2201 and 2202. The adversary proceeding is before the Court on Plaintiffs' Motion For Preliminary Injunction filed on May 8, 1992 pursuant to Rule 7065(a), Federal Rules of Bankruptcy Procedure, and Rule 65, Federal Rules of Civil Procedure.

■ In order to grant the remedy of a preliminary injunction, the Court must make specific findings of fact and conclusions of law. *Schrank v. Bliss*, 412 F.Supp. 28, 34 (M.D.Fla.1976) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70*, 415 U.S. 423, 443, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974); *Sampson v. Murray*, 415 U.S. 61, 92 n. 58, 94 S.Ct. 937, 951 n. 58, 39 L.Ed.2d 166 (1974); *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573, 578 (5th Cir.1974).

Upon the evidence presented, the Court makes the following findings of fact and conclusions of law as grounds for the issuance of the preliminary injunction.

### FINDINGS OF FACT

On October 16, 1990, Olympia Holding Corporation, formerly known as P*I*E Nationwide, Inc. ("Debtor"), filed a petition for relief under Chapter 11 of the Bankruptcy Code.

As of the petition date, Debtor was principally engaged in the business of motor carrier transportation providing truckload and less-than-truckload service for its customers.

As of the petition date, Debtor had pledged its accounts receivable to Fidelcor Business Credit Corporation ("Fidelcor") as security for more than $40 million in indebtedness to Fidelcor.

Fidelcor was Debtor's principal pre-petition lender pursuant to prior agreements between them.

On December 15, 1990, in the course of a hearing being conducted in Debtor's main bankruptcy case, Debtor announced its decision to terminate its operations.

On December 22, 1990, the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") ordered the appointment of a Chapter 11 trustee. On December 29, 1990, the Bankruptcy Court approved Lloyd T. Whitaker as the Chapter 11 trustee for Debtor.

In mid-January, 1991, Debtor terminated its operations.

On March 11, 1991, the Bankruptcy Court converted Debtor's case from a case under Chapter 11 of the Bankruptcy Code to a case under Chapter 7 and Lloyd T. Whitaker ("Trustee") was appointed the Chapter 7 trustee.

On March 24, 1991, the Bankruptcy Court granted Fidelcor's motion for relief from the automatic stay and vacated the automatic stay imposed by Bankruptcy Code Section 362(a) to permit Fidelcor to collect freight charges owed from former customers of Debtor.

In 1991, Phoenix Advisors and Collections, Inc. was engaged by Fidelcor to act as the Trustee's agent in collecting the accounts receivable owed the Debtor's estate.

The statute of limitations for instituting actions to collect these freight charges may begin to expire on certain accounts as early

as October 16, 1992, pursuant to Section 108(a)(2) of the Bankruptcy Code.

On June 4, 1991, the Trustee began filing adversary proceedings against former customers of Debtor ("Shippers") to collect freight charges and undercharges owed to Debtor. The freight undercharges are generally comprised of the difference between the full filed tariff rate and some lower but either allegedly unlawful or discounted tariff or contract rate. The total of these freight undercharges is estimated by the Trustee to be in excess of $200 million. The number of adversary proceedings to collect freight charges and undercharges which must be filed is estimated by the Trustee to be in excess of 20,000.

The Bankruptcy Court maintains exclusive subject matter jurisdiction over these freight undercharges as assets of the estate. 28 U.S.C. § 1334(d).

On April 1, 1992, the ICC instituted an administrative proceeding styled *Olympia Holding Company f/k/a P\*I\*E Nationwide, Inc., et al.* and assigned Docket No. MC–C–30197. On April 16, 1992, the ICC reissued its Order and renumbered the proceeding as No. 40785 ("Order" or "ICC Order").

The Order purports to institute an investigation to determine whether respondents (Plaintiffs here) "are violating the [Interstate Commerce Act] and the rules and regulations promulgated thereunder by collecting or attempting to collect freight charges in excess of those contained in duly filed tariffs without first seeking a determination from the Commission that the rate is unlawful". The Order also names AAA Trucking, a shipper unrelated to any of the Plaintiffs in this proceeding; the AAA Trucking trustee, Joseph DiPasquale; and the AAA Trucking agents and assignees.

The ICC purports to make Plaintiffs, none of which is a motor carrier, respondents in the ICC administrative proceeding and require them to file written statements under oath "showing good cause why a cease and desist order should not be issued prohibiting them from collecting or attempting to collect more than the previously billed discount rates on file with the Commission". The Order also requires these Plaintiffs to respond on or before May 6, 1992.

In addition, the Order provides that the Plaintiffs' failure to respond will result in the automatic issuance of a cease and desist order. If entered, the cease and desist order would prohibit Plaintiffs' collection of Debtor's accounts receivable.

On April 13, 1992, respondents (Plaintiffs here) filed a motion for more definite statement with the ICC.

During 1992, the ICC has regularly advised Shippers, through letters, a telephone hotline, and a brochure, that the Shippers do not owe the money that the Trustee is attempting to collect and that they do not have to pay that money.[1]

On May 1, 1992, the ICC entered a decision in No. 40785, holding that the scope of its Order is limited to the shipper coded tariffs and that Plaintiffs' response to the Order must be filed by May 25, 1992.

On May 12, 1992, Plaintiffs filed a Complaint for Declaratory Judgment and Injunction before this Court and asked it to enjoin the ICC from enforcing its Order in Docket No. 40785, from rendering any order, decision, or rule prohibiting Plaintiffs' collection or attempts to collect freight charges due the estate, and from otherwise interfering with such collection efforts on the grounds that (1) the ICC's Order and actions threaten the assets of the estate; (2) the ICC's Order and actions violate the automatic stay provisions of the Bankruptcy Code; and (3) the four-prong standard for injunctive relief is met.

On May 27, 1992, the United States, on behalf of the ICC, filed a motion to withdraw the reference, or in the alternative to

---

**1.** Even though the Court is not enjoining those activities, the Court hopes that the ICC will discontinue such activities. They could be hazardous to shippers' legal rights. For example, if, on the advice of the ICC, a shipper ignores a summons in a collection proceeding, a default could be taken and a judgment entered by the Court against the shipper.

dismiss this proceeding, or in the alternative, in opposition to Plaintiffs' motion.

On May 29, 1992, this Court held a hearing on Plaintiffs' motion for preliminary injunction. This Court heard the testimony of the witnesses (1) Lloyd T. Whitaker, Trustee for the Debtor; (2) Kenneth S. Berg, Phoenix Advisors and Collection Service's Director of Traffic; and (3) Don H. Norman, President of Don H. Norman Associates, Inc. This Court also heard argument from Plaintiffs and the United States, as well as from intervenors, Central States, Southeast and Southwest Areas Health and Welfare and Pension Fund and IU International Corporation.

## CONCLUSIONS OF LAW

■ This Court has original and *exclusive* jurisdiction over property of the Debtor's estate pursuant to 28 U.S.C. § 1334(d). Congress has authorized this Court to have jurisdiction over estate property within the scope of Section 541 of the Bankruptcy Code. The accounts receivable, including the freight undercharges component, are assets of the estate. *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir.1990); *In re Southwest Equipment Rental, Inc.*, Bankr.L.Rep. (CCH) ¶ 73,272 at 96,581, 1990 WL 129972 (Bankr. E.D.Tenn.1990); *In re Best Refrigerated Express, Inc.*, 1991 Fed.Carr.Cas. (CCH) ¶ 83,624 at 58,457. They are, therefore, property of the estate.

The Trustee has a duty and is required pursuant to Section 704(1) of the Bankruptcy Code to collect and reduce to money property of the estate which the Trustee serves.

The ICC's actions, Order, and threatened cease and desist order attempt to usurp jurisdiction over property of the Olympia estate, which is originally and exclusively before this Court.

Section 105 of the Bankruptcy Code empowers this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title". Accordingly, pursuant to Section 105, this Court has the authority to enjoin the ICC from usurping this Court's exclusive jurisdiction over estate property.

■ Plaintiffs ask this Court to grant injunctive relief against the ICC Order and actions, contending they have met the four-prong standard for injunctive relief. The traditional standards for granting injunctive relief are recited in Local Rule 4.05(b)(4), United States District Court, Middle District of Florida:

(i) The likelihood that the moving party will ultimately prevail on the merits of the claim;

(ii) The irreparable nature of the threatened injury ...;

(iii) The potential harm that might be caused to the opposing parties or others if issued; and

(iv) The public interest, if any.

*Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983).

### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

This Court finds that there is a substantial likelihood that Plaintiffs will succeed on the merits of their claim because the ICC has exceeded its statutory authority afforded it under the Interstate Commerce Act ("ICA"). Under 28 U.S.C. § 157, and the July 11, 1984 standing order of referral of the District Court for the Middle District of Florida, this Court has *exclusive* jurisdiction over property of the estate. The accounts receivable, including the component of freight undercharges, are assets of the estate. *In re Crysen*, 902 F.2d at 1101; *In re Southwest*, Bankr.L.Rep (CCH) at 96,581; *In re Best*, 1991 Fed.Carr.Cas. (CCH) at 58,457. This Court finds that the ICC has exceeded its statutory authority because the ICC does not have subject matter jurisdiction over the accounts receivable, assets of the estate.

### 2. IRREPARABLE HARM

Plaintiffs have made a sufficient showing of irreparable harm. The effect of the ICC Order and threatened cease and desist mandate is to inhibit and potentially prohibit Plaintiffs' collection of assets of the estate. The statute of limitations to collect these claims may begin to expire on Octo-

ber 16, 1992. The ICC's Order and threatened cease and desist order would prohibit the commencement of actions to collect or effectively would prohibit, by delaying, the commencement of actions to collect these accounts receivable. The Trustee may file in excess of 20,000 adversary proceedings by October 16, 1992, and has been and will be filing hundreds of cases on a daily basis. Any delay would place an unsurmountable burden and likely prohibition on the Trustee and this Court to timely process this massive litigation. The ICC's Order and actions also would prohibit the collection of Debtor's assets by blocking any steps to settle or otherwise resolve the complaints once commenced. No adequate remedy at law exists to compensate the estate for lost causes of action. Further, the instigator of this injury is the ICC, not the Shippers owing these claims, and therefore is not liable for these claims or for the lost causes of action on these claims.

Irreparable harm to the estate will also occur from the burdensome and unnecessary expense and time costs associated with asserting and then defending Plaintiffs' position before the ICC and from the disruption of this Court's ability to manage Debtor's liquidation efforts effectively and timely.

### 3. POTENTIAL HARM TO THE ICC

This Court finds that the ICC would not be harmed by the issuance of the preliminary injunction. The preliminary injunction merely prevents the ICC from interfering with issues that are properly before this Court and from circumventing this Court's jurisdiction. The issuance of this preliminary injunction will not encroach on the ICC's administrative powers or on its *appropriate* statutory authority. The ICC has failed to establish how the ICC would be damaged should the preliminary injunction issue.

### 4. PUBLIC INTEREST

This Court finds that there are conflicting public policy interests. The Trustee has an interest in carrying out his duties and legal responsibilities under the Bankruptcy Code. The ICC has its legal responsibility to perform its functions under the ICA. Accordingly, this Court finds that the public policy conflict is not in and of itself determinative on the issuance of the injunction.

It is

ORDERED:

1. Plaintiffs' Motion For Preliminary Injunction is granted until November 13, 1992 at 5:00 p.m.

2. The ICC is enjoined *pendente lite* from

a. enforcing its Order in Docket No. 40785;

b. issuing its threatened cease and desist order; and

c. initiating or maintaining any proceeding involving assets of this estate that would require any of the Plaintiffs to participate before the ICC.

3. Pursuant to Rule 65, Federal Rules of Civil Procedure, and Rule 7065, Federal Rules of Bankruptcy Procedure, Plaintiffs Fidelcor and Phoenix are required to post bond in the amount of $12,500 each by cashier's check payable to the registry of the court, which after payment of costs, will remit upon court order. This injunction will only then become effective. Pursuant to Rule 7065, Federal Rules of Bankruptcy Procedure, Plaintiff Trustee is not required to post bond.

4. The parties are to appear before this Court on Friday, November 13, 1992 at 7:00 a.m. for further hearing on this injunction.

DONE AND ORDERED.