**In re OLYMPIA HOLDING CORPORATION, et al., Debtors.**

**Lloyd T. WHITAKER, Trustee for Olympia Holding Corporation, Fidelcor Business Credit Corp., and Phoenix Advisors and Collections, Inc., Plaintiffs/Appellees,**

**v.**

**INTERSTATE COMMERCE COMMISSION, Defendant/Appellant.**

**Nos. 92–492–Civ–J–16, 92–603–Civ–J–16.**

United States District Court, M.D. Florida, Jacksonville Division.

Sept. 10, 1993.

Mitchell Wooten Legler, Gardner F. Davis, Foley & Lardner, Jacksonville, FL, Jennifer C. Pinson–Harvey, Phoenix Advisors & Collections, Inc., Jacksonville, FL, Robert M.

Poppell, c/o The Estate of P.I.E. Nationwide, Inc., Jacksonville, FL, for Lloyd T. Whitaker.

George E. Ridge, Kent, Ridge & Crawford, Jacksonville, FL, Kim D. Mann, Shawn, Mann & Niedermayer, Washington, DC, for Fidelcor Business Credit Corp.

W. Kelsea Wilber, Law Office of W. Kelsea Wilber, Steven R. Browning, c/o The Estate of P.I.E., Nationwide, Inc., Jacksonville, FL, for Phoenix Advisors and Collections, Inc.

Robert Wayne Genzman, U.S. Attorney's Office, M.D. Florida, Tampa, FL, Douglas J. Hughes, U.S. Dept. of Justice, J. Christopher Kohn, Tracy J. Whitaker, Ruth A. Harvey, U.S. Dept. of Justice, Civ. Div., Virginia Strasser, Theodore K. Kalick, Interstate Commerce Com'n, Washington, DC, for Interstate Commerce Com'n.

## OPINION AND ORDER

JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on appeal from the United States Bankruptcy Court for the Middle District of Florida (Case No. 92–603–Civ–J–16). This Court granted Defendant/Appellant's Motion for Leave to Appeal on October 30, 1992. This cause is also before the Court on a withdrawal of the reference granted March 31, 1993 (Case No. 92–492–Civ–J–16).

## BACKGROUND FACTS

On October 16, 1990, Olympia Holding Corporation, f/k/a P*I*E Nationwide, Inc. ("P*I*E"), filed a petition for relief under Chapter 11 of the Bankruptcy Code. P*I*E was principally engaged in the business of motor carrier transportation providing truckload and less-than-truckload service for customers. P*I*E was licensed by the ICC as a motor common carrier subject to the provisions of the Interstate Commerce Act (ICA), 49 U.S.C. §§ 10101, et seq., and the regulations promulgated thereunder by the ICC. In mid-January 1991, P*I*E ceased operations. On March 11, 1991, the Bankruptcy Court converted Olympia's case into one under Chapter 7, appointing Lloyd T. Whitaker as Chapter 7 Trustee.

Fidelcor Business Credit Corporation ("Fidelcor") was Olympia's principal pre-petition lender. Olympia had pledged more than $40 million in accounts receivable to Fidelcor as collateral for money borrowed by Olympia. On March 24, 1991, the Bankruptcy Court granted Fidelcor's motion for relief from the automatic stay and permitted Fidelcor to seek collection of alleged freight undercharges from former customers of P*I*E. Olympia maintains that former shippers of P*I*E owe more than $200 million in "undercharges," the difference between the full filed tariff rate and an alleged illegal discounted tariff rate. On July 20, 1991, the Trustee began filing adversary proceedings against former customers of P*I*E to collect the alleged undercharges and other freight charges owed Olympia. To date there are approximately 32,000 such adversary proceedings.

On April 1, 1992, the ICC instituted the administrative proceeding *Olympia Holding Company f/k/a P*I*E Nationwide, Inc., et al.*, Docket No. MC–C–30197[1]. A Show Cause Order was issued that day which stated:

1. An investigation proceeding is instituted under 49 U.S.C. § 11701(a) to determine whether the following named parties:

Olympia Holding Corp. f/k/a P*I*E Nationwide, Inc.;

Lloyd T. Whitaker, Trustee for Olympia Holding Corp. f/k/a P*I*E Nationwide, Inc.;

Fidelcor Business Credit Corp.

Phoenix Advisors and Collection, Inc.

AAA Trucking Corp.; and

Joseph DiPasquale, Trustee for AAA Trucking Corp.;

are violating the ICA and the rules and regulations promulgated thereunder by collecting or attempting to collect freight charges in excess of those contained in duly filed tariffs without first seeking a determination from the Commission that

1. The proceedings against the Plaintiffs/Appellees was renumbered in mid-April 1992, to No. 40785.

the rate is unlawful. Each party named herein is hereby made a respondent in this proceeding and must file with the Commission a written statement under oath, within 20 days after the date this order is served, showing good cause why a cease and desist order should not be issued prohibiting them from collecting or attempting to collect more than previously billed discount rates on file with the Commission.

2. Failure to respond will result in the issuance of a cease and desist order prohibiting the carriers and persons from assessing or attempting to collect other than the applicable transportation charges contained in previously billed shipper-coded discount tariffs on file with the Commission.

3. Upon filing of the written statements as ordered in paragraph 1, further proceedings may be ordered as appropriate. *Olympia Holding Company f/k/a P\*I\*E Nationwide, Inc., et al.*, Docket No. MC–C–30197, April 1, 1992, pp. 2–3. On April 13, 1992, Olympia filed a motion for more definite statement.[2] On May 1, 1992, the ICC issued an order explaining that "the specific impetus and focus of this show cause order was limited and directed to the unilateral disavowal of rates published by shipper code. Therefore, [Plaintiffs/Appellees'] response and any order issued by us will not extend beyond that issue." *Olympia Holding Company f/k/a P\*I\*E Nationwide, Inc., et al.*, Docket No. 40785, May 1, 1992, p. 1. The order gave Plaintiffs/Appellees 20 days to respond.

On May 12, 1992, Plaintiffs/Appellees filed a Complaint for Declaratory Judgment and Injunction in the Bankruptcy Court. On May 29, 1992, a hearing was held before the Honorable George L. Proctor, United States Bankruptcy Judge in the Middle District of Florida. On June 8, 1992, the Bankruptcy Court granted a preliminary injunction enjoining the ICC from (1) enforcing its show cause order in Docket No. 40785, (2) issuing its threatened cease and desist order, and (3) initiating or maintaining any proceeding that would require the Plaintiffs/Appellees participation 141 B.R. 443.[3] The injunction was

---

**2.** In their motion Plaintiffs/Appellees also argued that the ICC did not have jurisdiction over them because they are not "motor carriers" as defined in the ICA. Plaintiffs/Appellees made the same argument before the Bankruptcy Court. While the Bankruptcy Court did find that the Plaintiffs/Appellees were not motor carriers, Order of June 8, 1992, p. 4, the Bankruptcy Court did not rely on that fact in reaching its conclusion, nor did it conclude that the ICC lacked jurisdiction over Plaintiffs/Appellees because of that fact. Furthermore, Plaintiffs/Appellees have abandoned that argument on appeal. This Court finds no merit in the argument in any event. "The Trustee stands in the shoes of a motor carrier regulated by the ICC. It would defeat the purpose of the regulatory scheme to hold that bankruptcy ended the ICC's enforcement powers over the carrier. We hold that the ICC is authorized by the statute to bring a civil action of enforcement against the carrier's estate, 49 U.S.C. § 11702." *ICC v. Transcon Lines*, 990 F.2d 1503, 1512 (9th Cir.1992), *cert. den. sub. nom., Gumport v. ICC*, —— U.S. ——, 113 S.Ct. 2987, 125 L.Ed.2d 683, *vacated in part on other grounds, ICC v. Transcon Lines*, —— U.S. ——, 113 S.Ct. 2955, 125 L.Ed.2d 657 (1993).

**3.** The court did not address Plaintiffs/Appellees contention that the ICC show cause proceeding was in violation of the automatic stay provision of 11 U.S.C. § 362(a). As such, this Court will not determine the applicability of the automatic

stay. However, because the automatic stay has not been found applicable to the ICC show cause proceeding, this Court will assume, for the purposes of this opinion, that the ICC proceeding would be exempt, under 11 U.S.C. § 362(b)(4), from the automatic stay. If the proceeding was subject to the automatic stay then it would be unnecessary to determine if the extraordinary remedy of a preliminary injunction under 11 U.S.C. § 105(a) was justified. Furthermore, such an assumption is warranted because the ICC is permitted to conduct, *sua sponte*, investigations and proceedings of alleged violations of the ICA, 49 U.S.C. § 11701(a); *Zola v. ICC*, 889 F.2d 508, 515–517 (3rd Cir.1989), and because agency action in furtherance of its regulatory authority has been found exempt from the automatic stay under 11 U.S.C. § 362(b)(4), which allows the commencement or continuation of proceedings "to enforce [a] governmental unit's police or regulatory power." *See Brock v. Rusco Industries, Inc.*, 842 F.2d 270, 273 (11th Cir. 1988) (finding injunction action brought by Secretary of Labor to prevent the sale of goods produced in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, exempt from the automatic stay.); *In re Compton Corp., supra*, (finding Department of Energy's suit before the Office of Hearings and Appeals to liquidate its claim for price overcharges was exempt from the automatic stay and that it was inappropriate for the bankruptcy court to enjoin the proceedings under 11 U.S.C. § 105.).

set to expire on November 13, 1992, however, on November 4, 1992, the parties filed a Joint Motion for Continuance of the Preliminary Injunction pending the resolution of this appeal. The issues have been fully briefed and this cause is ripe for determination.

### STANDARD OF REVIEW

The Court will only set aside the bankruptcy court's findings of fact if they are clearly erroneous. Bankruptcy Rule 8013; *In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989). While "the bankruptcy court has the discretion and authority to enjoin federal regulatory proceedings under § 105 when those proceedings would threaten the debtor's estate, and when the court has jurisdiction over a petition in bankruptcy under 28 U.S.C. § 1471," *National Labor Relations Board v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir.1985), section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In re Compton Corp.*, 90 B.R. 798, 807 (N.D.Tex.1988) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)). "[T]he bankruptcy court's equitable discretion [deriving from section 105] is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code." *Wilner Wood Prod. v. State of Maine, D.E.P.*, 128 B.R. 1, 3 (D.Me.1991) (quoting *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820, 830 (1st Cir.1990)). This Court, therefore, will review the issuance of the preliminary injunction under an abuse of discretion standard. *In re Compton Corp.*, 90 B.R. at 806; *In re Fielder*, 799 F.2d 656, 657 (11th Cir.1986); *In re Costa and Head Land Company*, 68 B.R. 296, 298–99 (N.D.Ala. 1986).

### ANALYSIS

The Bankruptcy Court has authority under 11 U.S.C. § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." "Stays under section 105 are granted only 'under the usual rules for issuance of an injunction.' " *In re Hunt*, 93 B.R. 484, 492 (Bankr.N.D.Tex.1988) (quoting *In re Cournover*, 43 B.R. 354 (Bankr.R.I. 1984), *aff'd in part, rev'd in part*, 53 B.R. 478 (D.R.I.1985), *aff'd*, 790 F.2d 971 (1st Cir. 1986)); *In re Costa and Head Land Company*, 68 B.R. at 299.

> The party moving for a preliminary injunction must show: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, will not be adverse to the public interest.

*In re Costa and Head Land Co.*, 68 B.R. at 299; *Matter of 1600 Pasadena Offices, Ltd.*, 64 B.R. 192, 194 (Bankr.M.D.Fla.1986). This Court finds, although not necessarily for the reasons cited by the Bankruptcy Court, that the decision of the Bankruptcy Court of June 8, 1992, as modified by order of this Court on February 12, 1993, should be affirmed in part and reversed in part.

### A. IMPACT OF THE ICC SHOW CAUSE PROCEEDING ON THE BANKRUPTCY COURT'S JURISDICTION.

The Bankruptcy Court found that the ICC proceeding infringed upon that court's exclusive jurisdiction over the property of the bankrupt estate under 11 U.S.C. § 541 and 28 U.S.C. § 1334.[4] While it is without ques-

---

**4.** Defendant/Appellant claims that because the Bankruptcy Court lifted the automatic stay to allow Fidelcor to bring suit in the district court for collection of the accounts receivable the Bankruptcy Court lost jurisdiction over any matters associated with the collection of the receivables. To date only one such suit has been brought in the district court, *Fidelcor v. Dillard Dept. Stores*, No. 91–953–Civ–J–16, while the other 32,000 adversary proceedings have been brought in the Bankruptcy Court. The Bank-

ruptcy Court only loses jurisdiction over these receivables, upon the lifting of the stay, when there is no possibility a surplus will remain. *See, In re Incor, Inc.*, 113 B.R. 212, 215 (D.Md.1990). There is clearly the possibility of a surplus here. Fidelcor has an interest in $40 million of the accounts receivable while the Trustee claims there are more than $200 million in accounts receivable outstanding. As such the Bankruptcy Court retained jurisdiction over the undercharge litigation.

tion that causes of action are assets of the estate, *Miller v. Shallowford Community Hospital, Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985), as are accounts receivable, *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2nd Cir.1990), it is questionable whether the ICC proceeding, as it then existed, infringed upon the court's exclusive jurisdiction over the assets of the estate.

While the Bankruptcy Court has exclusive jurisdiction over the assets of the estate, the Bankruptcy Code specifically allows for certain proceedings to continue simultaneous with the bankruptcy proceedings. An example can be found in 11 U.S.C. § 362(b)(4), which makes an exception to the automatic stay provision of the Bankruptcy Code for "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." While the mere fact that certain activity is exempted from the automatic stay provisions does not mean the bankruptcy court is without jurisdiction to enjoin the conduct in certain limited circumstances, *In re Compton*, 90 B.R. at 805; *In re Hunt*, 93 B.R. at 491, such explicit exceptions do demonstrate that some actions that may *affect* the assets of the estate are permitted while others that pose a serious threat to the assets will not be allowed to continue.[5]

■ As noted above, an injunction may be issued pursuant to section 105 if the action sought to be enjoined "threatens the assets of the debtor's estate." *In re Hunt*, 93 B.R. at 492 (quoting *S.E.C. v. First Financial Group*, 645 F.2d 429, 440 (5th Cir.1981)). This Court, however, is not convinced that the issuance of a show cause order threatens the assets of the estate. The ICC relied heavily on the Supreme Court's decision in *Board of Governors v. MCorp Financial, Inc.*, —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), while the Bankruptcy Court found it distinguishable. This Court finds *MCorp* helpful. The Supreme Court's analysis in *MCorp* sheds a great deal of light on what is permitted under the Bankruptcy Code. In addressing the application of the automatic stay to an agency action the Court made it clear that non-final agency action, even when there exists the threat of a cease and desist order, is rarely in violation of the Bankruptcy Code.[6] The ICC hearings were just in their infancy; as were those of the Board of Governors in *MCorp*. Such a posture is important, as the Supreme Court noted:

At this point, the Board has only issued "Notices of Charges and of Hearing" and has expressed its intent to determine whether MCorp has violated specified stat-

---

**5.** Various governmental goals may co-exist with the Bankruptcy Court's goal of

preserving the corpus of the debtor's funds and estate under its own exclusive control.... In enacting the exceptions to section 362 [the automatic stay provisions], Congress recognized that in some circumstances, bankruptcy policy must yield to higher priorities. Indeed, if the policy of preservation of the estate is to be invariably paramount, then one could not have exceptions to the rule. Since Congress did provide for exceptions, however, we may assume that the goal of preserving the debtor's estate is not always the dominant goal.

*Penn Terra Limited v. Dept. of Environmental Resources*, 733 F.2d 267, 278 (3rd Cir.1984).

**6.** Plaintiffs/Appellees argue because the Financial Institutions Supervisory Act of 1968 (FISA), 12 U.S.C. §§ 1818, et seq., provides that

except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order,

12 U.S.C. § 1818(i)(1), and because the ICA does not have such a provision, *MCorp* is distinguishable. While the Court did rely on section 1818(i)(1), the Court expressly found that the ongoing, non-final agency action was exempted from the automatic stay and that the proceedings would *not* infringe upon the Bankruptcy Court's exclusive jurisdiction over the assets of the estate under 28 U.S.C. § 1334(d). *MCorp*, —— U.S. at ——-——, 112 S.Ct. at 464-65. The Court's finding is even more persuasive given the fact the Board of Governors had already issued three temporary cease and desist orders which required MCorp to get Board approval before "dissipating any of its nonbank assets." *Id.*, —— U.S. at ——, 112 S.Ct. at 461. The Court's reliance on 12 U.S.C. § 1818(i)(1) is immaterial to its holding that the Board's proceedings were not in conflict with the Bankruptcy Code. *Id.*, —— U.S. at ——, 112 S.Ct. at 464 n. 11. This Court, therefore, concludes that the Supreme Court's holding in *MCorp* is not materially distinguishable from this case and is relevant to the determination of the issues pending in this appeal.

utory and regulatory provisions. It is possible, of course, that the Board proceedings, like many other enforcement actions, may conclude with the entry of an order that will affect the Bankruptcy Court's control over the property of the estate, but that *possibility* cannot be sufficient to justify the operation of the stay against an enforcement proceeding that is expressly exempted by subsection (b)(4). To adopt such a characterization of enforcement proceedings would be to render § 362(b)(4)'s exception almost meaningless. If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b). We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, non-final administrative proceedings.

*MCorp,* —— U.S. at ——, 112 S.Ct. at 464 (emphasis in original) (footnote omitted). The Court rejected the notion that the Board proceeding was designed to take control of the estate assets. Such a rejection is equally applicable here. The ICC proceedings are not designed to gain control over the assets of Olympia. The proceedings are designed to enforce the ICA and the regulations promulgated thereunder.

While a cease and desist order from the ICC *could* threaten Olympia's assets, the mere issuance of a show cause order does not intrude upon the Bankruptcy Court's jurisdiction over the estate assets. Given the posture of the ICC proceedings the Bankruptcy Court was not hampered at all in its administration of the estate. The proceedings did not remove any assets from the Bankruptcy Court's jurisdiction. Should the ICC, at the conclusion of the show cause proceeding, issue a cease and desist order and seek to have the order enforced, then the Bankruptcy Court's concerns over the ICC intruding on its jurisdiction over the assets of the estate might be justified. Until then, the concerns are premature.

## B. IMPACT OF THE ICC SHOW CAUSE PROCEEDING ON THE ASSETS OF THE ESTATE.

■ Plaintiffs/Appellees argue that it would greatly deplete the assets of the estate if they were required to defend each of the 32,000 adversary proceedings before the ICC prior to pursuing those claims in this Court and the Bankruptcy Court. The Bankruptcy Court made no findings as to the total costs involved in defending Plaintiffs/Appellees' actions before the ICC. There is nothing in the record to indicate that the Plaintiffs/Appellees would be required to justify in a separate proceeding each and every adversary proceeding involving the coded shipper rates. Furthermore, although the Bankruptcy Court did conclude that Plaintiffs/Appellees would suffer from the "burdensome and unnecessary expense and time costs associated with asserting and then defending Plaintiffs' position before the ICC," Order of June 8, 1992, p. 9, the Bankruptcy Court based its conclusion on the fact that it had exclusive jurisdiction over the assets of the estate and any assets expended to defend against a potential cease and desist order was a "burdensome and unnecessary expense."

As previously noted, such a blanket conclusion is erroneous. Given that at the time the injunction was issued the ICC proceeding was presumably a valid exercise of authority, *see* note 3, *supra,* the findings of the Bankruptcy Court are insufficient to conclude that the time and money to be spent defending a position before the ICC justify enjoining the ICC show cause proceeding. This is especially true when several of the issues to be addressed in the underlying adversary proceedings fall within the primary jurisdiction of the ICC; which means Olympia may be required to participate in proceedings before the ICC at some point in the future in any event. *See, e.g., Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (referral of rate reasonable defense to the ICC.) While litigation expenses are a factor to be considered, "litigation expenses alone do not justify a stay of the proceeding." *In re Hunt,* 93 B.R. at 496 (quoting *EEOC v. Rath Packing Co.,* 787 F.2d 318, 325 (8th Cir.1986)). The record is void of any showing that there will be such a depletion of

estate assets resulting from participation in the show cause proceeding as to justify the injunction.

## C. IMPACT OF *WHITE v. UNITED STATES*, ON THE ICC SHOW CAUSE PROCEEDING.

■ While the above discussion would seem to indicate that the ICC show cause proceeding should be allowed to go forward, such is not the case given the recent decision in *White v. United States*, 989 F.2d 643 (3rd Cir.1993), in which the Third Circuit invalidated the pre-screening of undercharge claims under regulations promulgated in Ex Parte No. MC–208. This Court finds *White* dispositive of the issue before the Court.[7]

Defendant/Appellant's position in this case is identical to the rules announced in Ex Parte No. MC–208,[8] it is an attempt by the ICC to pre-screen undercharge claims brought by bankrupt carriers. The Defendant/Appellant characterizes the Plaintiffs/Appellees' position as an attempt "to prevent the ICC's consideration of whether [Plaintiffs/Appellees] should be restrained from attempting to collect over $200 million

in purported 'freight undercharges' without first securing ICC approval." Brief of Appellant, p. 6. The Defendant/Appellant's position is that it, "through its administrative proceeding, simply seeks to exercise its duties assigned by Congress in adjudicating the lawfulness of tariffs, and no property of the debtor is seized or controlled in contravention of the bankruptcy court's jurisdiction." Brief of Appellant, p. 25. Requiring the Plaintiffs/Appellees to seek prior approval from the ICC before bringing their undercharge claims is no different then the "prior review procedure" struck down in *White*.

The ICC has made it known that it finds it an unwarranted practice for defunct motor carriers to file undercharge claims on the theory that the coded discount rates are illegal, therefore justifying the collection of a higher tariff rate years later. *See Transcon Lines*, 990 F.2d at 1515–17. It is not necessary, in this case, to wait for the ICC to issue a cease and desist order which has already been found to be beyond the ICC's statutory authority for this Court to determine that such an order is an *ultra vires* act on behalf of the Commission. Because this Court finds

---

7. This Court recognizes that ordinarily a Bankruptcy Court should not engage in an exercise to determine if an agency proceeding is a legitimate exercise of the agency's police or regulatory power. *MCorp*, —— U.S. at ——, 112 S.Ct. at 464. An exception is recognized in this case where an intervening decision by a court of appeals strikes down the very proceeding in question before the Court and the agency acknowledges it will not challenge the ruling further. This Court, therefore, finds *White* controlling.

8. The rules announced in MC–208 were promulgated to address problems the ICC saw resulting from the Supreme Court's decision in *Maislin Industries, U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

In the wake of the *Maislin* decision, trustees and collection agents for carriers that are no longer operating have sought to extend the mantle of *Maislin* to justify repudiating their filed tariff rates originally used in calculating freight charges and attempting retroactively to collect additional amounts for past shipments by either asserting that some other (usually higher) filed tariff rate is now applicable, or claiming that the freight had not moved under contracts (i.e., claiming that the service provided was common, rather than contract, carriage). The rules we are adopting here are addressed to these two situations, *to screen out*

*those claims which do not have a valid or even colorable basis.*

ICC Ex Parte No. MC–208: Nonoperating Motor Carriers—Collection of Undercharges, 8 I.C.C.2d 742, 745 (1992) (emphasis added) (footnotes omitted). The Commission went on to state: "We believe that *this prior review procedure* will better protect the public from invalid carrier claims and will conserve the time of the courts in which such claims must ultimately be brought for collection." *Id.* at 751 (emphasis added). The "rules provide for ... a determination of whether a nonoperating carrier or its representatives has a colorable claim for undercharges which does not violate the filed rate doctrine, in order to *screen out baseless claims.*" *Id.* at 753 (emphasis added). The court in *White* found these rules impermissible.

Because we find that the process of "pre-screening" of undercharge claims is the process of partial adjudication of undercharge claims, because the Act does not authorize the Commission to adjudicate undercharge claims or to exercise any other power from which the process of disapproving undercharge claims could be legitimately derived, and because this process is—by the Commission's own account—the "sole purpose of the Rules," we will set aside the Rules as in excess of statutory authority.

*White*, 989 F.2d at 652.

that the sole purpose of the show cause proceeding was to screen out what the Defendant/Appellant believes to be invalid claims, a function found invalid in *White*, this Court finds the show cause proceeding to be in excess of the ICC's statutory authority. Requiring Plaintiffs/Appellees to participate in the unauthorized proceeding would unduly burden the Bankruptcy Court's administration of the bankruptcy estate.

### D. SCOPE OF THE INJUNCTION.

■ The Bankruptcy Court ordered:

\*  \*  \*  \*  \*  \*

2. The ICC is enjoined *pendente lite* from
a. enforcing its Order in Docket No. 40785;
b. issuing its threatened cease and desist order; and
c. initiating or maintaining any proceeding involving assets of this estate that would require any of the Plaintiffs to participate before the ICC.

Parts a. and b. have already been addressed and found within the scope of the Bankruptcy Court's authority under 11 U.S.C. § 105 as the proceeding is clearly one beyond the scope of the ICC's statutory authority and such a proceeding would unduly threaten the assets of the bankruptcy estate. Turning the focus to part c., this Court finds that the Bankruptcy Court abused its discretion when it extended the injunction to proceedings that had not even been initiated or contemplated. The practical effect of this portion of the Bankruptcy Court's order is to extend the automatic stay to all ICC proceedings involving the Plaintiffs/Appellees. Such a blanket extension would render the exception found in 11 U.S.C. § 362(b)(4) meaningless. The Bankruptcy Court explicitly stated that it would not address the automatic stay issue because that issue was not properly before the court. Transcript of Proceedings, May 29, 1992, p. 110. Because some future ICC proceeding may involve the Plaintiffs/Appellees and be exempt from the automatic stay and because not all ICC proceedings are in conflict with the Bankruptcy Court's administration of the bankruptcy estate, the blanket extension of the injunction to all future ICC proceedings involving the Plaintiffs/Appellees is an abuse of discretion.

Section 2.c. of the June 8, 1992, order was modified by order of this Court on February 12, 1993, to allow the ICC to conduct proceedings required to address issues referred to it by this Court falling within the primary jurisdiction of the ICC. This Court now finds that section 2.c. of the June 8, 1992, in its entirety should be vacated.

For the reasons stated herein, it is now

### ORDERED AND ADJUDGED:

1. The preliminary injunction issued June 8, 1992, enjoining the ICC *pendente lite* from enforcing its Order in Docket No. 40785 and from issuing its threatened cease and desist order (section 2.a. and 2.b. of the June 8, 1992, order) is AFFIRMED.

2. The preliminary injunction issued June 8, 1992, enjoining the ICC *pendente lite* from initiating or maintaining any proceeding involving assets of the Olympia estate that would require any of the Plaintiffs/Appellees to participate before the ICC (section 2.c. of the June 8, 1992, order) is REVERSED and VACATED.

### DONE AND ORDERED.