**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,**
Defendant.

No. 02–00519–CV–W–DW.

United States District Court,
W.D. Missouri,
Western Division.

July 14, 2004.

Anne E. Gusewelle, Equal Employment Opportunity Commission, St. Louis, MO, for Plaintiff.

Lynne J. Bratcher, Bratcher & Gockel, L.C., Brad I. Pearson, DeSimone Pearson LC, Kansas City, MO, for Intervenor.

Michael L. Blumenthal, Stacie Michelle Destin, Constangy, Brooks & Smith, LLC, Kansas City, MO, for Defendant.

## ORDER

WHIPPLE, District Judge.

### I.

On March 31, 2002, Plaintiff Equal Employment Opportunity Commission

("EEOC") filed this action against Defendant Consolidated Freightways ("CF") seeking equitable and monetary relief on behalf of twelve african-american individuals formerly employed at CF's Kansas City facility. The Complaint alleges that CF subjected the individuals to racial harassment, discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981. On September 3, 2002, CF filed for bankruptcy in a federal court in California. Upon the filing of the Notice of Filing Bankruptcy, this Court held that it would refrain from ruling on pending motions until the automatic bankruptcy stay is lifted.

In the pending motion, EEOC maintains that the automatic stay is inapplicable to its lawsuit against the defendant. (Doc. No. 57.) In response, CF concedes that the automatic stay does not halt litigation in this case, but asks that the Court enter a discretionary stay of the action. (Doc. No. 61.) For the following reasons, the Court agrees that the automatic stay does not apply to EEOC's suit and denies the request for a discretionary stay.

## II.

■■■ The filing of a bankruptcy petition operates as an automatic stay of judicial proceedings against the debtor. 11 U.S.C. § 362(a). "The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *EEOC v. Rath Packing Co.,* 787 F.2d 318, 324 (8th Cir.1986) (citation omitted). However, under the police or regulatory power exception, actions by a government unit to enforce its police or regulatory powers are exempt from operation of the automatic stay. 11 U.S.C. § 362(b)(4). The purpose of the exception "is to prevent the bankruptcy court from becoming a haven for wrongdoers." *In re Commonwealth Co., Inc.,* 913 F.2d 518, 527 (8th Cir. BAP 1990) (citation omitted). The police or regulatory exception applies to actions brought by the EEOC. *Rath,* 787 F.2d at 325.

In this case, the parties agree that the underlying lawsuit brought by EEOC fits within the police or regulatory power exception to the automatic stay provision. Accordingly, litigation of this action can progress in spite of the pending bankruptcy proceeding.[1] However, CF asks that the Court grant a discretionary stay of the case pursuant to 11 U.S.C. § 105(a). *See Commonwealth,* 913 F.2d at 527 (stating that § 105(a) gives courts the discretionary power to stay judicial proceedings).

■■■ A discretionary stay under § 105 is to be granted under the usual rules governing the issuance of injunctions. *Id.; Rath,* 787 F.2d at 325. A court should therefore consider the following factors in determining whether to grant a discretionary stay: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance of hardships; and (4) whether granting the injunction is in the public's interest. *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir.2003).

---

1. The Court reminds the parties that, at this point and time, EEOC is the only plaintiff in the lawsuit. Though several individuals have filed motions to intervene, those motions have not yet been ruled on. As noted, upon CF's bankruptcy filing, the Court refrained from ruling on any pending motions, the motions to intervene included, until the automatic stay is lifted. (Doc. No. 53.) Therefore, the Court's ruling today pertains only to EEOC's suit against CF and does not affect those seeking to intervene.

*Likelihood of Success on the Merits*

At the outset, it should be noted that a good deal of confusion surrounds what action courts should look to when considering the first factor. Some courts require the movant to show a likelihood of success at the bankruptcy proceeding, while others hold that the relevant focus is on the non-bankruptcy action. *See In re First Alliance Mortgage Co.,* 264 B.R. 634, 653 (C.D.Cal.2001) (discussing the various approaches taken by federal courts). Though the Eighth Circuit has not spoken on the issue, the parties' briefs only address CF's likelihood of achieving success on the merits of this case. Finding no binding authority to suggest this is the wrong approach, the Court follows the parties' lead.

■ CF contends that its likelihood of success is high because EEOC's is low. Specifically, CF argues that EEOC's request for equitable relief is moot because CF has ceased operations in Kansas City. The defendant further argues that, even if EEOC is successful in obtaining a money judgment, it is unlikely that it will be able to collect on the judgment through the bankruptcy proceedings as an unsecured creditor. For its part, EEOC does not directly address CF's arguments, but rather sets forth the facts and arguments supporting its claims of racial discrimination and harassment.

The Court cannot state with any degree of certainty that CF has a high likelihood of succeeding on the merits of this case. While CF correctly concludes that EEOC cannot obtain equitable relief given the present condition of the company, the same is not true of the monetary relief sought. Moreover, the fact that EEOC may never be able to collect on the money judgment is not a proper consideration in determining whether it will succeed on the merits of *this* case. Accordingly, the Court finds that CF has failed to show a likelihood of success on the merits.

*Threat of Irreparable Harm*

■ CF insists that it would suffer irreparable harm if made to litigate the suit before this Court. It first argues that the lawsuit will be costly to defend, estimating the litigation expenses to be over $250,000. Def. Sugg. in Supp. at p. 5. CF points out that EEOC brings this case on behalf of twelve individuals, each with their own version of events and complaints of discrimination. The Court agrees that litigation of the case could be costly—it doesn't have to be, but the potential is there. However, "Congress by excepting certain actions from the automatic stay provision recognized that the debtor would likely incur litigation expenses as a result of any excepted lawsuit." *Commonwealth,* 913 F.2d at 527. Accordingly, courts generally do not find irreparable harm based on litigation expenses alone. *Rath,* 787 F.2d at 325. Moreover, as the Eighth Circuit has observed, "there will probably be cases where going forward with regulatory proceedings will not threaten the assets of a bankrupt estate, even though they may diminish them." *NLRB v. Superior Forwarding, Inc.,* 762 F.2d 695, 699 (8th Cir. 1985). The Court is unconvinced that this is not one of those cases. The costs associated with litigating this suit will no doubt diminish the assets of the estate, but CF has not shown that the costs pose a significant threat to the assets. Further, it is noteworthy that CF does not argue that litigation in this Court will be costlier than to try the matter in the bankruptcy court. *See In re Santa Clara Cty. Fair Ass'n, Inc.,* 180 B.R. 564, 566 (9th Cir. BAP 1995) (concluding that debtor's failure to argue that resolution of the claim would be less taxing in the bankruptcy court than in district court amounted to a request for delay). For these reasons, little weight is

given to the litigation expenses that CF may incur.

CF also asserts that it will suffer irreparable harm because it cannot spare the employees that will be necessary to defend this lawsuit. The company states that if this action is allowed to continue, Kim Mingo, who is in-house counsel for CF, will be forced to devote countless hours to this lawsuit, hours that would otherwise be spent assisting with the liquidation of the bankrupt estate. As one of only twenty-four employees still with the company, CF maintains that Ms. Mingo's participation in the liquidation is critical.

The added burden that will be placed on Ms. Mingo and other CF employees in defending this suit does not rise to the level of irreparable harm. Though liquidation of the company's estate is a mighty chore, fortunately it is not one that Ms. Mingo and other CF employees are shouldering alone. According to the record, CF has retained the law firm of Latham & Watkins to assist the company during the bankruptcy process. And such legal assistance appears to be substantial, for in the first three months of 2004 the law firm charged CF over $1.3 million. Moreover, the Court finds suspect CF's claim that it would be over-burdened by this case in light of the California bankruptcy court's recent decision to lift the automatic stay of an unrelated discrimination case. *See Lee v. Consolidated Freightways Corp.*, 4:99–CV–1227–SOW. Presumably, before lifting the stay the bankruptcy court considered the added burden that would be placed on CF if forced to litigate the *Lee* case.

For these reasons, the Court does not find that CF will suffer irreparable harm if this case is allowed to continue.

### Balance of Hardships

The harm that will be experienced by CF if a discretionary is not entered, see discussion above, must be balanced against the harm that EEOC will suffer if the Court enters a stay. CF argues that EEOC would not experience any harm because the agency could prosecute the action before the bankruptcy court. The Court finds a number of problems with CF's argument. First, because a jury trial has been demanded, it is not entirely clear whether the bankruptcy court would have jurisdiction to hear EEOC's suit against CF. *See In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir.1990)(recognizing the bankruptcy court's limited authority to conduct jury trials). Second, CF's position fails to account for the harm that EEOC will suffer if not allowed to prosecute the case in its chosen forum. As one court has phrased it:

[T]he hardship to the governmental units of not being allowed to proceed with their actions in their chosen forums includes harms different in character from the harms normally considered on motions for injunctions under § 105....As Congress recognized when it created the regulatory and police powers exception, the goals of public policy, punishment, and deterrence may sometimes conflict with the goals of maximizing an individual estate's assets and efficiently processing claims. It is the former goals, which are difficult to...measure in dollars and cents, that are impaired when a governmental unit loses the ability to enforce its laws in its own forum.

Considering deterrence in particular, the harm to the governmental units must be measured with a broader perspective in mind than these parties alone.... [T]he governmental units are entitled to make the choice that, over time, [members of the public] benefit more when companies do not violate the law in part

because they know that bankruptcy will not provide a way out when their wrongs are discovered.

*First Alliance,* 264 B.R. at 659.

The harms facing each party are qualitatively different. However, the Court is not convinced that one harm is more substantial than the other—that is, it is not obvious that CF faces more harm if the case continues than EEOC suffers if the stay is granted. Under these circumstances, the balance of the hardships factor does not favor nor disfavor a stay in this case.

### Public Interest

 Lastly, the Court must consider whether a stay is in the public interest. As with the previous factor, both sides make valid arguments that the public interest factor supports their position. CF maintains that the creditors of the estate will be harmed if CF is forced to expend assets by litigating this case. EEOC contends that the twelve individuals who were allegedly discriminated against deserve their day in court, and further argues that a stay would send a message to the public that bankruptcy court is, in fact, a haven for wrongdoers. *See Commonwealth,* 913 F.2d at 527. Because the positions of both sides have merit, the Court finds the public interest factor of little use.

On balance, the factors discussed above do not support a stay of this action. The Court therefore finds that CF has not satisfied its burden of showing that a discretionary stay is necessary in this case.

### III.

For the foregoing reasons, the Court denies the defendant's motion for a discretionary stay—but it does so reluctantly. Assuming EEOC succeeds and obtains a money judgment against CF, the Court questions whether CF will have sufficient assets to cover the judgment once the company's secured creditors are paid. A hollow victory for EEOC in this case would be a waste of time and resources for CF, the government, the injured employees, and this Court. With that said, the Court encourages the parties to attempt a quick settlement of this matter.

IT IS SO ORDERED.